IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| GIANT GRAY, INC., | § | CASE NO. 18-31910-H2-7 |
| | § | |
|    DEBTOR | § | |
| | § | |
| | § | |
| LOWELL T. CAGE, TRUSTEE, | § | |
| | § | |
|    PLAINTIFF | § | |
| | § | |
| v. | § | ADVERSARY NO. 20-3129 |
| | § | |
| PEPPERWOOD FUND I, LLC, | § | |
| ASSED "OZZIE" KALIL AND | § | |
| MICHAEL J. O'DONNELL | § | |
| | § | |
|    DEFENDANTS | § | |

**FIRST AMENDED COMPLAINT
FOR AVOIDANCE AND RECOVERY OF FRAUDULENT TRANSFERS**

TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:

Lowell T. Cage, Trustee (the "Trustee") of the bankruptcy estate of Giant Gray, Inc. (the "Debtor") files this First Amended Complaint for Avoidance and Recovery of Fraudulent Transfers, and respectfully represents as follows:

**I. JURISDICTION**

1. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 157 and 1334 and 11 U.S.C. § 105, 544 and 550. This is a core proceeding. This Court has authority to enter final judgment in this proceeding.

1

## II. PARTIES

2. Lowell T. Cage, Trustee is the duly appointed chapter 7 Trustee of the bankruptcy estate of Giant Gray, Inc.

3. Defendant Pepperwood Fund I, LLC ("Pepperwood Fund I") is a Texas limited liability company. Pepperwood Fund I will be served with this First Amended Complaint through its counsel of record, Paul Keiffer, Rochelle McCullough, 325 North Saint Paul St., Suite 4500, Dallas, Texas 75201.

4. Defendant Assed "Ozzie" Kalil ("Kalil") is an individual residing in Plano, Texas. Kalil will be served with this First Amended Complaint through his counsel of record, Paul Keiffer, Rochelle McCullough, 325 North Saint Paul St., Suite 4500, Dallas, Texas 75201.

5. Defendant Michael J. O'Donnell ("O'Donnell") is an individual residing in Addison, TX 75001. O'Donnell will be served with this First Amended Complaint through his counsel of record, Paul Keiffer, Rochelle McCullough, 325 North Saint Paul St., Suite 4500, Dallas, Texas 75201.

## III. SUMMARY OF THE COMPLAINT

6. In April 2015, the Debtor fraudulently issued 1,000 Shares of Series A Preferred Stock (the "Series A Shares") to Ray Davis, the Debtor's founder and Chairman, which gave him a controlling interest in the company. Ray Davis worked with Defendants Kalil and O'Donnell to sell the Series A Shares that had been fraudulently issued to him. Within months of issuance, Ray Davis agreed to sell the Series A Shares for $15,000,000.00 to Pepperwood Fund II, LP, an investment fund created by Defendant O'Donnell. Unbeknownst to anyone other than Ray Davis, Kalil, O'Donnell and few others in their inner circle, Ray Davis agreed to pay

$5,000,000.00 of the $15,000,000 purchase price to Kalil and O'Donnell through another entity they created – Pepperwood Fund I.

7.      Pursuant to 11 U.S.C. §§ 544 and 550 and applicable state law, the Trustee seeks to avoid and recover the fraudulent transfer of $5,000,000 made to the Defendants by or through the Debtor and Ray Davis.

## IV.    BACKGROUND FACTS

**A.    History of the Debtor and the Initial Fraud Committed by Ray Davis**

8.      In November 2005, Ray Davis founded Behavioral Recognition Systems, Inc. n/k/a Giant Gray, Inc., a software company that developed and marketed proprietary artificial intelligence software, called "AISight" to analyze video surveillance data. The Debtor raised capital primarily through equity from private investors. Through 2015, the Debtor had received more than $115 million from private investors.

9.      Ray Davis, as the Chairman and/or Chief Executive Officer, fraudulently transferred millions of dollars from the Debtor to himself through fictitious entities that he created and controlled. Beginning in about 2012 and continuing until 2015, Ray Davis fraudulently transferred more than $11.5 million from the Debtor to personal bank accounts.

10.     On December 7, 2017, Ray Davis was indicted by the United States Department of Justice. On December 14, 2017, the Securities and Exchange Commission (the "SEC") filed a civil action against Ray Davis and the Debtor, as defendants, and Blackstone Group, Inc., Afcon Communications, Inc. and Debra Davis as relief defendants. Therein, the SEC asserted claims against the Debtor for violations of applicable securities law, and in addition sought to disgorge any funds from Blackstone Group, Inc., Afcon Communications, Inc. and Debra Davis that were

proceeds or traceable to the traceable to the proceeds of the unlawful activities of Ray Davis and the Debtor.

11. On April 13, 2018, an involuntary chapter 7 bankruptcy petition was filed against the Debtor in Case No. 18-31910, in the United States Bankruptcy Court for the Southern District of Texas, Houston Division (the "Bankruptcy Case"). An Order for Relief was entered on or about May 15, 2018, and Lowell Cage was appointed as the Trustee.

12. Ray Davis passed away on July 7, 2018.

**B.     The Fraudulent Issuance of Stock to Ray Davis**

13. The Debtor was a privately held company owned largely by third party investor shareholders. As of 2015 there were in excess of 70 million shares of common stock issued and owned by such investors. Ray Davis owned 1,530,000 shares of common stock in the Debtor or less than 3%.

14. However, by early 2015, the Debtor's financial picture was woeful. Investors were growing restless of repeated failed promises of a return on their investment as the Debtor struggled to turn its concept into a commercially viable product. Ray Davis' health also began to deteriorate and he needed an exit strategy. Ray Davis reached out to an old confidant and trusted ally in Defendant Kalil to help him find a solution. Kalil introduced Ray Davis to Michael O'Donnell ("O'Donnell"). Sensing the opportunity, Kalil and O'Donnell agreed to help Ray Davis find a buyer for the Debtor.

15. Of course, getting shareholder approval of a sale would be difficult and it certainly would not have the return that Ray Davis wanted since he only owned less than 3% of the outstanding shares of common stock. So, as he was planning with Kalil and O'Donnell to sell the company, on April 13, 2015, the Debtor's Board of Directors – which consisted only of

Ray Davis and John Frazzini – issued a "Unanimous Written Consent to Action Without Meeting of the Board of Directors of Behavioral Recognition Systems, Inc." (the "Resolution") that authorized the Debtor to issue 1000 shares of Series A Convertible Preferred stock (the "Series A Stock") to Ray Davis as the sole recipient. The Resolution also provided that the Series A Stock would "enable the holder thereof to vote 67% of the total vote on all shareholder matters", effectively giving Ray Davis full control of the company.

16. The Resolution was signed by Ray Davis as Chairman of the Board and John Frazzini ("Frazzini") as the only other director for the Debtor. Frazzini signed the Resolution after Ray Davis demanded that he sign it quickly before the start of a meeting in April 2015. Ray Davis was threatening to shut the Debtor down or to allow the Debtor to fail if the Series A Stock was not issued to him so that he could monetize a sale of the Debtor or its controlling shares. The issuance of the Series A Stock to Ray Davis was never put to a shareholder vote and was otherwise concealed from the Debtor's other shareholders.

17. The stated consideration for the issuance of the Series A Stock to Ray Davis was his agreement to the terms of an Employment Agreement dated April 13, 2015 (the "Employment Agreement"), but "effective" as of January 1, 2014. However, the Employment Agreement merely installed Ray Davis as chairman of the Board of Directors, and required no duties of him other than duties typically required of a board chairman. The Employment Agreement provided that he would be compensated at $300,000.00 for 2014 (retroactively) and would continue at $469,000.00 from 2015 through 2020. He was also given other compensation in the form of stock options, a bonus of up to 100% of salary and 60 days per year of paid time-off. This compensation was in addition to the yearly salary of $350,000.00 he received as chief executive of the Debtor.

18. After the issuance of the Series A Stock, Ray Davis quickly moved to monetize it through a transaction with Kalil and O'Donnell, who had formed Pepperwood Fund II, LP ("Pepperwood Fund II") as a vehicle to raise cash from investors to acquire the Series A Stock from Ray Davis.

19. On or about July 1, 2015, Ray Davis and his wife, Debi S. Davis, entered into a Referral Agent Agreement with Pepperwood Fund I that provided that Pepperwood Fund I would receive $5,000,000 of the $15,000,000 from the sale of the Debtor's shares owned by Ray Davis

20. On or about July 28, 2015 Ray Davis and his wife, Debi S. Davis, entered into an Amended and Restated Agreement for Purchase and Sale of Stock Interest in Behavioral Recognition Systems, Inc. (the "Sale Agreement") that provided for the sale of the Series A Stock and Ray Davis' common stock to Pepperwood in exchange for $15 million.

21. In conjunction with the Sale Agreement, Ray and Debi Davis, Pepperwood Fund I, and the McGeary Law Firm, P.C. signed an Amended and Restated Escrow Agreement setting forth the terms by which the shares would be transferred and funds from the sale of the shares would be paid to Ray Davis and to Pepperwood Fund I.

22. Following the sale, Pepperwood Fund I received funds as follows:

| Date | Amount |
|---|---|
| September 18, 2015 | $1,000,000.00 |
| December 16, 2015 | $1,825,000.00 |
| December 31, 2015 | $172,150.00 |
| April 4, 2016 | $1,999,800.00 |
| TOTAL | $4,996,950.00 |

These funds (collectively, the "Transfers") were sent from the Escrow Agent to Pepperwood Fund I.

23. On information and belief, after receipt of the monetized funds from the fraudulently transferred Series A Stock, Pepperwood Fund I distributed the funds to Defendants O'Donnell and Kalil.

C. **The Issuance of the Series A Stock is Avoidable**

24. Tex. Bus. & Comm. Code Section 24.005(a)(1) provides that "a transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or within a reasonable time after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation… with actual intent to hinder, delay, or defraud any creditor of the debtor."

25. Tex. Bus. & Comm. Code Section 24.005(b) provides the following list of non-exclusive factors to be used to determine actual intent under Subsection (a)(1):

   (1) the transfer or obligation was to an insider;
   (2) the debtor retained possession or control of the property transferred after the transfer;
   (3) the transfer or obligation was concealed;
   (4) before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit;
   (5) the transfer was of substantially all the debtor's assets;
   (6) the debtor absconded;
   (7) the debtor removed or concealed assets;
   (8) the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred;
   (9) the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred;
   (10) the transfer occurred shortly before or shortly after a substantial debt was incurred; and
   (11) the debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor.

26. The circumstances of the transfer meet at least the following factors: 1/ Ray Davis was an insider, 2/ the transfer of the Series A Stock was concealed, 3/ the Series A Stock

represented the controlling interest in the Debtor, hence the transfer was tantamount to a transfer of substantially all of the Debtor's assets, 4/ Ray Davis' fraudulent actions and multiple breaches of fiduciary duty while chief executive of the Debtor substantiate removal and concealment of assets, 5/ the consideration received by the company was not reasonably equivalent to the value of the Series A Stock, and 6/ the Debtor was insolvent at the time of the transfer.

27. Tex. Bus. & Comm. Code Section 24.005(a)(2) provides that "a transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or within a reasonable time after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation… without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor… was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or… intended to incur, or believed or reasonably should have believed that the debtor would incur, debts beyond the debtor's ability to pay as they became due."

28. The consideration received by the Debtor in exchange for the transfer of the Series A Stock to Ray Davis was less than its reasonably equivalent value, and on information and belief, the Debtor was engaged in, or was about to engage in, a business or transaction for which its remaining assets were unreasonably small; and it intended to incur, or believed that it would incur, debts beyond its ability to pay.

29. Tex. Bus. & Comm. Code Section 24.006(a) provides that "a transfer made or obligation incurred by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made or the obligation was incurred if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or

obligation and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation."

30. The Debtor was insolvent at the time of transfer of the Series A Stock to Ray Davis, or became insolvent as a result of the transfer to Ray Davis. In exchange for the transfer of the Series A Stock to Ray Davis, the Debtor received less than reasonably equivalent value. As the time of the issuance of the Series A Stock the Debtor owed millions of dollars to noteholders that it could not pay.

31. Based on the foregoing, the Debtor's transfer of the Series A Stock to Ray Davis was a fraudulent transfer pursuant to the provisions of the Tex. Bus. & Comm. Code Section described herein.

32. Further, multiple creditors exist that could have asserted claims under Tex. Bus. & Comm. Code Section 24.005(a)(1), (a)(2), and 24.006(a) against the Defendants. These creditors are identified on the attached **Exhibit A**. Each of these creditors filed proofs of claim, which relate to debt that arose prior to the first payment to the Defendants referenced in this Complaint and thereby qualify as claims that "arose before or within a reasonable time after the transfer was made or the obligation was incurred." Each of the claims referenced on Exhibit A have been allowed in the Bankruptcy Case.

33. Trustee may invoke the provisions of the Tex. Bus. & Comm. Code pursuant to 11 U.S.C. § 544(b) which provides that "the trustee may avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under applicable law by a creditor holding an unsecured claim that is allowable under section 502 of this title…"

## V. COUNT 1: RECOVERY OF SUBSEQUENT TRANSFERS UNDER 11 U.S.C. § 550

34. Section 550 of the Bankruptcy Code provides that "to the extent that a transfer is avoided under section 544… of this title, the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property, from… (2) any immediate or mediate transferee of such initial transferee." [1]

35. As detailed above, the Transfers to Pepperwood Fund I and subsequently to O'Donnell and Kalil can be traced directly to funds received from Ray Davis through the Referral Agreement, the Sales Agreement and the Escrow Agreement related to the sale of the Series A Stock to Pepperwood Fund II.

36. The Trustee is entitled to judgment against the Defendants for the total amount of the transfers pursuant to 11 U.S.C § 550(a)(2).

WHEREFORE, the Trustee prays that the Court: (1) avoid the transfers described herein to subsequent transferees Pepperwood Fund I, LLC, Assed "Ozzie" Kalil, and Michael J. O'Donnell pursuant to Section 550 representing the value of the Series A Stock fraudulently transferred from the Debtor to Ray Davis pursuant to applicable provisions of Tex. Bus. & Comm. Code Section 24 as incorporated into the Bankruptcy Code by Section 544; (2) award Trustee his reasonable costs, attorney's fees and expenses as may be appropriate; and (3) grant Trustee such other and further relief as is just.

---

[1] The Trustee is not required to obtain a judgment avoiding the initial transfer to Ray Davis before seeking recovery from subsequent transferees under § 550(a)(2). *In re AVI, Inc.*, 389 B.R. 721, 735 (B.A.P. 9th Cir. 2008); *In re Crafts Plus+, Inc.*, 220 B.R. 331, 338 (Bankr. W.D. Tex. 1998).

Respectfully submitted,

**McCLOSKEY ROBERSON, PLLC**


By: /s/ Thomas A. Woolley, III
    Timothy M. McCloskey
    State Bar No. 13417650
    tmccloskey@mccloskeypllc.com
    Thomas A. Woolley, III
    State Bar No. 24042193
    rwoolley@mccloskeypllc.com
    945 Heights Boulevard
    Houston, TX 77008
    713-868-5581
    713-868-1275 (fax)
**SPECIAL LITIGATION COUNSEL
FOR LOWELL T. CAGE, CHAPTER 7
TRUSTEE OF GIANT GRAY, INC.**

*and*

TIMOTHY L. WENTWORTH
TBN 21179000
Okin Adams LLP
1113 Vine St. Suite 240
Houston, Texas 77002
Direct: (713) 255-8882
**ATTORNEYS FOR LOWELL T.
CAGE, TRUSTEE**

11

**CERTIFICATE OF SERVICE**

    I certify that a true and correct copy of the above-referenced motion was served by electronic mail on all parties listed below on this the 4th day of November 2020, unless served by ECF at the time of electronic filing.

E. P. Keiffer
Kathryn Reid
**ROCHELLE MCCULLOUGH, LLP**
325 North Saint Paul St., Suite 4500
Dallas, TX 75201
Email: pkeiffer@romclaw.com
Email: kreid@romclaw.com
**ATTORNEYS FOR PEPPERWOOD FUND I, LLC, ASSED "OZZIE" KALIL AND MICHAEL J. O'DONNELL**

                                            /s/ Thomas A. Woolley, III
                                            Thomas A. Woolley, III